IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. S1- 4:20 CR 178 HEA |
| | ) | |
| v. | ) | |
| | ) | |
| JAMORE CLARK (1), | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**GOVERNMENT'S RESPONSE TO DEFENDANT CLARK'S
MOTION TO SUPPRESS EVIDENCE**

COMES NOW the Plaintiff, United States of America, through its attorneys Sayler A. Fleming, United States Attorney for the Eastern District of Missouri and Sirena Miller Wissler, Assistant United States Attorney for said District, and responds to the Motion to Suppress Evidence filed by defendant Jamore Clark ("Clark").

**STATEMENT OF RELEVANT FACTS**

In the early morning hours of September 16, 2019, the Riverview Police Department/St. Louis County Police Department received a 911 call for a medical emergency in the 400 block of Thrift Avenue in Riverview, within the Eastern District of Missouri.  According to the caller, there was a female subject in the residence who needed medical attention.  Riverview Police responded to the scene and contacted Anderson Stallings ("Stallings") inside the residence.  He led officers to a female victim, E.B., who was located in the master bedroom.  She appeared to have suffered two gunshot wounds, one to the leg and the other to the head.  She was transported to the hospital, and ultimately succumbed to her wounds.

Responding officers conducted a protective sweep of the residence to ensure that the person who had shot E.B. was not still inside.  In the basement, investigators noticed seven large duffel

1

bags in a cluster on the floor.  One of these seven duffel bags was partially open, revealing a plastic bag of a white crystal substance.  Upon further inspection, the seven duffel bags were discovered to each contain multiple plastic bags of a substance that field-tested positive for methamphetamine (as confirmed by subsequent laboratory analysis). Investigators removed one of the plastic bags from one of the duffel bags in order to obtain a weight.  A single plastic bag of methamphetamine weighed approximately one pound.  Investigators then conducted an inventory of the duffel bags and discovered them to contain – in the aggregate – 172 plastic bags of methamphetamine.

Interviews with E.B.'s family members revealed that defendant Jamore Clark ("Clark") had been paying E.B.'s rent in exchange for her allowing him to store drugs in her basement. Investigators observed a photograph, taken on or about September 16, 2019 and posted to a social media app, of E.B.'s children standing in front of Clark's vehicle holding large stacks of U.S. currency.  The license plate of Clark's vehicle was clearly visible in the photograph.  E.B.'s family confirmed that Clark had come to the residence with the money and had allowed E.B.'s children to hold the money and pose with it.

Following the discovery of more than 150 pounds of methamphetamine in E.B.'s basement, the Drug Enforcement Administration in St. Louis commenced an investigation of Jamore Clark. The investigation continued for several months and ultimately involved a number of judicially authorized wiretaps on telephones utilized by Clark, among others.

On May 6, 2020, agents established physical surveillance on Clarks' residence based upon intercepted communications suggesting that he was planning to meet with co-defendant Clarence Totten("Totten").  They observed Clark's silver Ford Fusion passenger vehicle (Missouri license place ND4 P2E) parked in the parking lot of Clark's building.  Agents intercepted a telephone conversation between Clark and Totten in which the latter requested to pick up an unknown quantity of drugs from

Clark. Following that conversation, surveillance agents observed Clark leave his apartment and get into the silver Ford Fusion and exit the parking lot.  Under surveillance, Clark traveled to and entered a residence at 4518 Stivers in St. Louis.  Agents had previously identified that address as a "stash house" for narcotics and/or firearms.

While Clark was inside the Stivers residence, Totten called Clark and warned him, "there too many people . . . police, they ain't . . . they 'county.'"  Shortly thereafter, Clark left the Stivers residence and was observed carrying a black shaving-style bag.  Clark got back into the Ford Fusion and traveled to the parking lot of a barbecue restaurant on Jennings Station Road.  He met for a short time with an unknown male driving a black Infiniti passenger sedan.  The unknown male got into Clark's Ford Fusion and the two departed the parking lot. They drove to the Stratford Commons Apartments, where they met with Totten.  After a short meeting, during which Totten leaned into Clark's vehicle, Clark and Totten left – in separate vehicles but traveling together – and took eastbound Interstate 70 toward St. Louis.  Agents attempted to conduct a traffic stop on Totten's vehicle but traffic conditions impeded their efforts.  Agents also maintained surveillance on Clark, who placed an outgoing telephone call to a female subject in which he instructed her to "go to the crib [house] and get that thing out of the basement."

Clark began to drive erratically, alternating between eastbound and westbound Interstate 70. During a phone call from an unknown male, Clark repeatedly stated "oh, my God," and later asked the caller to "pick [him] up in the backyard at granny house."  At one point, agents lost sight of Clark's Ford Fusion for a brief period.  When they located it, the vehicle was unoccupied.  Thereafter, agents intercepted a call to a woman named Danielle in which Clark stated, "there go the police, right there." He also told her, "they all over through this mother***er."  Danielle, who was en route to Clark's location, identified (correctly) multiple vehicles as unmarked police vehicles.  As Clark continued to

direct Danielle to his location, agents observed Clark emerge from between two houses and approach Danielle's black Mercedes passenger vehicle. Clark was arrested and Danielle was detained.

Agents asked Clark for the keys to the Ford Fusion passenger vehicle he had been driving all day and that he had abandoned nearby. Clark denied possessing the keys and denied ownership of the vehicle. When advised that he had been surveilled throughout the day and observed driving it, Clark again denied having been in possession of the Ford. He also indicated that he did not reside at the Stivers address, claiming that he had "nothing to do" with that residence.

Through the window of Clark's Ford Fusion, agents observed the black shaving-style bag he had carried out of the Stivers address before meeting with Totten. They gained access to the Fusion and retrieved the bag. They discovered that it contained a large quantity of suspected fentanyl. The substance was later confirmed by laboratory tests to consist of approximately 758 grams of fentanyl. Pursuant to a grant of consent, agents also searched the Stivers address, at which they located an AR-15 style rifle with a drum magazine. On the same date, agents obtained and executed a search warrant at Clark's residence, from which they seized jewelry, ammunition, 7 cellular telephones, and $31,451 in cash.

Clark now moves to suppress all items seized during the search of the Ford Focus.

## ARGUMENT

### I.   IF CLARK PERSISTS IN DISCLAIMING OWNERSHIP OR POSSESSION OF THE FORD FUSION, HE LACKS STANDING TO OBJECT TO ITS SEARCH

As a preliminary matter, defendant Clark has not conceded any possessory or ownership interest in the Ford Fusion, the search of which forms the basis for his motion to suppress. To the contrary, Clark acknowledges that when investigators approached him about the vehicle, Clark "explained it was not his car and that he did not have a key to it." (Doc. #278, p. 2). Clark's

disavowal is not insignificant.  To the contrary, if Clark persists in the position that the Ford Fusion does not belong to him, his motion to suppress must be summarily denied.

It is well-settled that a defendant must demonstrate a legitimate expectation of privacy in the item at issue to sustain a claim of Fourth Amendment violations. See *United States v. Green*, 275 F. 3d 694, 698 (8th Cir. 2001) (citing *Rakas v. Illinois*, 439 U.S. 128, 138–144 (1978)). A legitimate expectation of privacy requires that the defendant have a subjective expectation of privacy that is also objectively reasonable. *United States v. Green*, 275 F.3d 694, 699 (8th Cir. 2001) (citing *United States v. Muhammad*, 58 F. 3d 353, 355 (8th Cir. 1995)). The Supreme Court has specifically ruled that a person has no reasonable expectation of privacy in a vehicle belonging to another person. *Rakas*, 439 U.S. at 148–149.

Furthermore, Fourth Amendment rights are personal rights that may not be "vicariously asserted." *Id.* at 133–34. As such, an accused may not assert the Fourth Amendment rights of a third party. *United States v. Stringer*, 739 F.3d 391, 396 (8th Cir. 2014). A defendant can argue for the suppression of evidence gathered through an illegal search and search only if the "defendant demonstrates that *his* Fourth Amendment rights were violated." *United States v. Payne*, 119 F.3d 637, 641 (8th Cir. 1997) (citing *United States v. Padilla,* 508 U.S. 77, 81 (1993) (per curiam)).

In the instant case, defendant Clark has failed to acknowledge any ownership interest in the Ford Fusion. Instead, he expressly disavowed the same when speaking with enforcement, and nothing in his Motion to Suppress suggests otherwise. In fact, his motion characterizes the Ford Fusion as a "vehicle law enforcement *believed* he was driving."  (Doc. #278, p. 2) (emphasis added).  As a result of his failure to recognize his possession or ownership of the Ford Focus, Clark has disavowed any legitimate expectation of privacy in that vehicle.  Clark lacks standing to object

to the search of the vehicle, and his motion to suppress the evidence seized as a result of that search should be summarily denied.

## II.   EVEN IF CLARK HAS STANDING TO OBJECT TO THE SEARCH OF THE VEHICLE, THE SEARCH WAS SUPPORTED BY PROBABLE CAUSE AND AGENTS WERE NOT REQUIRED TO OBTAIN A SEARCH WARRANT

It is beyond dispute that "the right of the people to be secure in their person, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated. . ." *U.S. Const. Amend. IV.* It is important to note, however, that the Fourth Amendment prohibits only searches that are "unreasonable." The Supreme Court has repeatedly explained the basic constitutional principle that warrantless searches "are *per se* unreasonable under the Fourth Amendment subject only to a few specifically established and well-delineated exceptions." *Katz v. United States*, 389 U.S. 347, 357 (1967). One such exception is the "automobile exception."

In *Carroll v. United States*, 267 U.S. 132 (1925), the United States Supreme Court held that a warrantless search of an automobile is not unreasonable within the meaning of the Fourth Amendment so long as the searching officers have probable cause to believe the vehicle contains contraband. *See also*, *United States v. Randolph*, 628 F.3d 1022, 1024–25 (8th Cir. 2011). Probable cause exists when a reasonable person, given the totality of the circumstances, could believe there is a fair probability that contraband or evidence of a crime would be found in a particular place. *Kleinholz v. United States*, 339 F.3d 674, 676 (8th Cir. 2003) (citing *United States v. Fladten,* 230 F.3d 1083, 1085 (8th Cir.2000)). Courts should apply a common-sense approach to determine whether or not probable cause exists. *United States v. Kennedy*, 427 F.3d 1136, 1141 (8th Cir. 2005).   Where police are entitled to search a vehicle pursuant to probable cause, they may lawfully "conduct a search of the vehicle that is as thorough as a magistrate could authorize in a warrant 'particularly describing the place to be searched.'" *United States v. Ross*, 456 U.S.

798 (1982).  The permissible scope of such a search includes searches of closed containers within the vehicle.  *Id.* at 825. ("[i]f probable cause justifies the search of a lawfully stopped vehicle, it justifies the search of every part of the vehicle and its contents that may conceal the object of the search.").  Importantly, the "automobile exception" to the warrant requirement does *not* require a separate showing of exigency.  *Maryland v. Dyson*, 527 U.S. 465, 467 (1999); *see also, United States v. Kelly,* 592 F.3d 586, 591 (4th Cir. 2010) (declining to "carve out exceptions to the automobile exception based on the degree of control police exercise over a vehicle"); *United States v. Sinisterra*, 77 F.3d 101, 105 (5th Cir. 1996) (officers who had probable cause to believe a van in operational condition contained narcotics were "authorized to search it without a warrant, even if the circumstances were not exigent.")

In the instant case, investigators had probable cause to believe the Ford Fusion passenger vehicle contained contraband – specifically, drugs.  Clark had been the subject of a months-long investigation prompted by the discovery of nearly 175 pounds of methamphetamine in E.B.'s residence.  Multiple witnesses advised law enforcement that E.B. and Clark had an arrangement whereby Clark paid E.B.'s rent in exchange for use of her basement.  Moreover, E.B.'s children were photographs holding very large stacks of U.S. currency while standing in front of Clark's car on the day E.B. was found shot to death in her home.

During the resultant investigation, multiple judicially authorized wiretaps further revealed the identities of Clark's co-conspirators, including Totten and physical surveillance in conjunction with those calls had revealed that Clark maintained a "stash house" at 4518 Stivers.  Telephone calls intercepted on March 8, 2019 indicated that Clark intended to meet with Totten and/or others to conduct a drug transaction, so agents established physical surveillance on Clark.  The saw him enter the silver Ford Fusion in the parking lot of his own residence and drive that vehicle to 4518

Stivers, where he went inside.  While inside, Clark spoke with Totten (in a telephone call intercepted by agents in real-time), who expressed concern about the presence of law enforcement nearby.  After leaving Stivers and meeting with Totten in what appeared to be a drug transaction, Clark drove erratically and ultimately contacted a female associate.  Clark (correctly) identified law enforcement vehicles and expressed concern about being under surveillance.  Clark ultimately abandoned the Ford Fusion and hid until such time as his female acquaintance arrived in the area to pick him up. Clark left the black shaving-style bag behind when he fled the Fusion.  Adding to the equation, Clark falsely denied that he had been driving the Fusion, and falsely denied that he had any association with 4518 Stivers.

In summary, the totality of the circumstances presented to a team of highly trained and experienced Drug Enforcement Administration agents and Task Force Officers, who had been investigating Clark for months, would lead any reasonable person to believe that a fair probability existed to believe that contraband (specifically, drugs) would be located in the Ford Fusion.  The search of that vehicle, and the black shaving-style bag, was entirely lawful and the evidence seized therefrom should not be suppressed.

## III.   AGENTS WERE NOT REQUIRED TO REQUEST CLARK'S CONSENT TO SEARCH THE FORD FUSION.

Clark urges the Court to suppress the evidence seized from the Ford Fusion because, among othe things, Clark "was not asked for consent to open and/or search the vehicle, nor did he give it." (Doc. #278, p. 3).  In so doing, Clark appears to tacitly acknowledge that one of the well-delineated exceptions to the warrant requirement is a search pursuant to a grant of consent. *Schneckloth v. Bustamonte*, 214 U.S. 218, 219 (1973).

> Consent to search, a valid exception to the [Fourth Amendment's] warrant requirement, may be given either by the suspect or by some other person who has common authority over, or

sufficient relationship   to,   the   item   to   be   searched.
*United States v. Long*, 797 F.3d 558, 568–69 (8th Cir. 2015) (internal citation and quotation omitted).  "A warrantless search is justified when an officer reasonably relies on a third party's demonstration of apparent authority, even if that party lacks common authority."  *United States v. Amratiel*, 622 F.3d 914, 915 (8th Cir. 2010).  "Apparent authority exists when "the facts available to the officer at the moment ... warrant a man of reasonable caution in the belief that the consenting party had authority over the premises."  *Id.* at 916.

In the instant case, Clark suggests that investigators should have (or perhaps that they were *required to*) request his consent to search the Ford Fusion.  He offers no support for this proposition, and indeed there is none.  Where law enforcement officers have probable cause to conduct a search of a vehicle, the occupant's consent is not required. Moreover, Clark's claim that the search is constitutionally defective for *lack of consent* flies directly in the face of his statements disavowing ownership of the vehicle.  It makes no sense whatsoever to suggest that law enforcement officers should have requested Clark's consent to search a vehicle that he had claimed he did not own or control.  Had the officers done so, the government strongly suspects that Clark would now be before this Court arguing that the officers' reliance on that grant of consent was not reasonable given his statements denying ownership of the vehicle. To be certain, it would be difficult to argue that such "a man of reasonable caution" would believe that Clark had "authority over" the vehicle such that reliance on his grant of consent would have been reasonable where Clark had *specifically denied* having anything to do with the vehicle.[1]

---

[1] One could hypothesize that the analysis might be different if, for example, Clark had admitted *possession* of the car while denying *ownership*.  Those, however, are not the facts of the instant case.  Here, Clark expressly denied having been in the Ford Fusion at all.  He denied having the keys, denied that it was his car, and when advised that he had been seen by investigators driving that vehicle throughout the day, Clark denied the same.

The investigators who conducted the search of the silver Ford Focus on March 6, 2019 had probable cause to believe that contraband (e.g., drugs) would be found in that vehicle and, as a result, they were entitled to conduct a search of that vehicle without necessity of a warrant or a grant of consent. The search was entirely lawful and the evidence seized as a result should not be suppressed.

## CONCLUSION

For the foregoing reasons, the government respectfully requests that the Court deny Clark's Motion to Suppress Evidence in its entirety.

Respectfully submitted,

SAYLER A. FLEMING
UNITED STATES ATTORNEY

/s/ Sirena Miller Wissler
SIRENA MILLER WISSLER #55374MO
Assistant United States Attorney
111 S. 10th Street, 20th Floor
St. Louis, MO  63102
Sirena.wissler@usdoj.gov

## CERTIFICATE OF SERVICE

I hereby certify that on this 9th day of September, 2021, I caused the foregoing to be filed electronically with the Clerk of the Court, to be served by way of the Court's electronic filing system upon counsel for defendant Jamore Clark.

 /s/ Sirena Miller Wissler
Sirena Miller Wissler #55374MO